IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER GROSS, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. |
| | ) |
| HAIN PURE PROTEIN CORPORATION, | ) |
| CHARTWELL STAFFING SERVICES, INC. | ) |
| VALENTIN APOLINAR LEPIZ, INDIVIDUAL | ) |
| AND JOHN DOES | ) JURY TRIAL DEMANDED |
| Defendants | ) |

_____

**COMPLAINT**

AND NOW comes Plaintiff, Christopher Gross, through his undersigned counsel, Jeremy A. Donham, Esquire, and files the following Complaint:

**INTRODUCTION & JURISDICTION**

1.    Plaintiff, Christopher Gross (hereinafter referred to as "Mr. Gross" or "Plaintiff") is an adult individual and resident of Adams County, Pennsylvania.

2.    Defendant, Hain Pure Protein Corporation, et al, (hereinafter referred to as "HPPC") is a Pennsylvania business with an address of 304 S. Water Street, New Oxford, PA 17350.

1

3.    Defendant Chartwell Staffing Solutions Services, Inc., (hereinafter referred to as "Chartwell") is a Pennsylvania business with an address of 1895 York Rd, Gettysburg, PA 17325.

4.    Upon information and belief, Valentin Apolinar Lepiz (hereinafter "Defendant Lepiz" is an adult individual and resident of Adams County, Pennsylvania.

5.    This is, in part, is an action authorized and instituted pursuant to: Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act (hereinafter "ADA"); the Pennsylvania Human Relations Act (hereinafter "PHRA) and the common law of the Commonwealth of Pennsylvania. All exhaustion requirements in the jurisdictions have been met (see Plaintiff's Exhibit A).

6.    This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. 1391(b) (1) and (b) (2). The actions complained of took place in this judicial district; evidence and employment records relevant to the allegations are maintained in this judicial district; Mr. Gross was terminated in this judicial district and but for the unlawful actions and practices of the Defendants would not have been; and Chartwell and HPPC is present and regularly conducts affairs in this judicial district.

## UNDERLYING FACTS

7.    Mr. Gross hereby incorporates by reference all forgoing paragraphs of this Complaint as though fully set forth at length herein.

8.    HPPC, upon information and belief, employ over fifty (50) employees. Chartwell upon information and belief employees over fifteen (15) employees.

9.    Mr. Gross was hired by HPPC through Chartwell and assigned to work for HPPC, a chicken processing plant. Mr. Gross began full time employment for HPPC on or about August 15, 2014, as a line worker.

10.    Ms. Gross' duties included general laborer, working the line cutting up chickens, and he worked a pallet jack.

11.    Mr. Gross had multiple supervisors during the time of his employment.

12.    Valentine Apolinar Lepiz- Chicken Thigh Line Leader, Immediate Supervisor- Victor Burranco, Ismail (last name unknown) and Manager- Alladis Russ.

13.    During Mr. Gross' employment he worked satisfactorily for both the employers.

14.    On August 28, 2014, Mr. Gross injured his right hand and wrist working the line. The tendons in his wrist and hand were strained. At this time Mr. Gross sought worker's compensation benefits from employer, HPPC.

15.   Mr. Gross was unable to grab or grip objects in his right hand. He was unable to perform more than one (1) hour of continuous/repetitive work with his right hand without an accommodation in some form.

16.   On August 29, 2014, Mr. Gross returned to work with a doctor's note stating he would need to rest and ice his right hand for ten (10) minutes periodically.

17.   Mr. Gross' supervisors were aware of the injury and that Mr. Gross could only perform left handed duties and some right handed duties with accommodation.

18.   The job assignments that Mr. Gross was given did not meet these requirements.

19.   On September 5, 2014, Mr. Gross contacted Zuma (last name unknown) in Human Relations at Chartwell regarding his restrictions and the job assignments that were not meeting his restrictions. Chartwell agents took no action to facilitate an accommodation.

20.   On October 20, 2014, Mr. Gross reminded Ismail and Victor Burranco of Mr. Gross' restrictions and the doctor's note stating his restrictions. Mr. Gross also contacted Alladis Russ, a manager at HPPC regarding making accommodations for his injury.

21.   Neither Chartwell nor HPPC engaged in the interactive process of providing the accommodations needed for Mr. Gross.

22. From August 27, 2014 to November 21, 2014, Mr. Gross was also sexually harassed by Defendant Lepiz while working for HPPC.

23. On August 27, 2014, Defendant Lepiz sent a message to Mr. Gross on Facebook.

24. On September 10, 2014, Defendant Lepiz started sending pictures and messages to Mr. Gross stating he thought Mr. Gross was "cute and sexy."

25. On September 21, 2014, while working at HPPC, Defendant Lepiz grabbed and groped Mr. Gross.

26. On September 28, 2014, Defendant Lepiz sent Mr. Gross several sexually charged messages on Facebook (see attached as Plaintiff Exhibit B).

27. On November 9, 2014, Defendant Lepiz sent Mr. Gross a message on Facebook requesting to have sexual relations. To which Mr. Gross responded on the same day "OMG, Stop."

28. On or about November 14, 2014, grabbed Mr. Gross in the crotch area while at work. Mr. Gross demanded that Defendant Lepiz stop and again Defendant Lepiz grabbed Mr. Gross.

29. Mr. Gross was continually harassed and humiliated.

30. The hostile working conditions caused Mr. Gross to be unable to effectively perform his duties and he grew depressed, anxious, and fearful about losing his job.

31.    Mr. Gross' job restriction requests made by he and his physician were never met.

32.    On or about November 21, 2014 Mr. Gross informed other supervisors at HPPC and Zuma at Chartwell telling them that he was going to contact a lawyer regarding the harassment and Mr. Gross requested all the names of the supervisors.

33.    On November 21, 2014, Mr. Gross was terminated by HPPC. The reason given was Mr. Gross had missed too much work because of his hand injury.

34.    At no time during the harassment or subsequent termination did Chartwell engage HPPC about accommodations or the harassment regarding Mr. Gross or challenge the termination on the basis that it was discriminatory and retaliatory and for this reason among others stated below it is complicit in the actions of HPPC.

35.    Both Corporate Defendants are liable for the actions of its agents under a theory of *respondeat superior*.

## COUNT I: ADA DISCRIMINATION

36.    Mr. Gross hereby incorporates by reference all forgoing paragraphs of this Complaint as though fully set forth at length herein.

37.    At all relevant times hereto, Mr. Gross was qualified to perform the duties associated with his position and did perform his job consistent with Defendant's legitimate expectations.

38.    Mr. Gross was in a protected class having injured his right hand and wrist on August 28, 2014.

39.    Mr. Gross injured his hand and wrist while at work at HPPC on assignment from Chartwell.

40.    Mr. Gross was unable to grab or grip objects in his right hand and unable to perform more than one hour of continuous/repetitive work with his right hand or wrist.

41.    Neither HPPC nor Chartwell engaged in an interactive discussion about an appropriate accommodation for Mr. Gross's workplace injury issues.

42.    Mr. Gross required a rest break for approximately ten (10) minutes periodically to apply ice and elevate the right hand and wrist.

43.    Mr. Gross had communicated his injuries to "Ismail" (last name unknown) the Deboning Line Leader and "Victor" Burranco a supervisor regarding his workplace injuries and provided doctor's notes on September 5, 2014 and October 20, 2014 in an ongoing effort to interact regarding an appropriate accommodation.

44.    Mr. Gross' physical impairments and disabilities substantially limited one or more life activities such as performing some manual tasks and lifting;

45.    Mr. Gross had a record of such impairments/disabilities.

46. Mr. Gross was regarded by all Defendants as having such impairments/disabilities.

47. Mr. Gross made every attempt to facilitate the needs of his employer but the Defendants were unwilling to accommodate his disability.

48. The ADA prohibits discrimination in the workplace against employees who have, inter alia, sought assistance for an accommodation in the workplace.

49. Mr. Gross requests for accommodations in the workplace constituted "protected activity" pursuant to state and federal law.

## COUNT II
## ADA HOSTILE WORK ENVIRONMENT

50. Plaintiff hereby incorporates by reference all forgoing paragraphs of this Complaint as though fully set forth at length herein.

51. The plaintiff avers that he is a qualified individual with a disability under the ADA because his disabilities as more fully noted above.

52. Additionally, the Plaintiff has also been under a physician's care for his disabilities since he was diagnosed.

53. The plaintiff was subject to unwelcomed harassment when he was repeatedly and continuously mistreated as more fully noted above.

54. The harassment was based on the plaintiff's disability and/or a request for an accommodation.

55. The harassment was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and to create an abusive working environment because the plaintiff was not accommodated, was mistreated as more fully described above, and was repeatedly suspended and terminated.

56. The employers knew or should have known of the harassment and failed to take prompt effective remedial action to quell the constant harassment.

57. The failure to prevent or correct the unwanted harassment created a hostile work environment and constitutes adverse employment actions.

58. The fact that the plaintiff's supervisor was a perpetrator of the harassment and discrimination entitles the plaintiff to strict liability for his claims.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to the ADA and all applicable statutory remedies including but not limited to: monetary relief for the Plaintiff, including as applicable economic and compensatory damages including punitive damages if applicable, and all reasonable attorney's fees and costs.

## COUNT III ADA RETALIATION

59. Plaintiff hereby incorporates by reference all forgoing paragraphs of this Complaint as though fully set forth at length herein.

60. As more fully described above, the Plaintiff sought the assistance of Defendants to cease and desist from harassment and to obtain accommodations but was not

assisted.   As a result, a hostile work environment resulted and the Plaintiff was retaliated against based on his disabilities.

61.    The ADA prohibits retaliation in the workplace against employees who have, *inter alia*, sought assistance for disability accommodations in the workplace or to have otherwise opposed practices made unlawful under the law.

62.    The Plaintiff requests for an accommodation in the workplace and his communication to the human resources and supervisors of both employers in opposition to the treatment and that he was seeking the assistance of a lawyer constitute "protected activity" pursuant to state and federal law.

63.    All Defendants retaliated against the Plaintiff on account of his protected activity, including but not limited to the following:

a.    Failing to provide the Plaintiff with reasonable accommodations during his employment.

b.    Failing to properly respond to the Plaintiff's requests for accommodations.

c.    Failing to properly investigate the Plaintiff's requests for accommodations or of notifying him of his rights under the law.

d.    Subjecting the Plaintiff to continuing harassment, abuse and inappropriate pressure in the workplace as more fully noted above.

e.    Falsely accusing the Plaintiff of misconduct and/or inappropriate behavior at work in an effort to retaliate against the plaintiff.

f.    Subjecting the Plaintiff to an unreasonable amount of written disciplinary actions, monitoring, and adversarial meetings and ultimately termination.

64.     The Plaintiff believes and therefore avers that Defendants' purported basis to discipline him (e.g. that he missed work) was false and erroneous and that Defendants' had made no attempt to assist the Plaintiff with a reasonable accommodation given his disabling conditions.

65.     As a result of all of the above, the Plaintiff believes and therefore avers that the Defendants created a hostile work environment and retaliated against him on account of his protected activity by imposing disciplinary measures and continuing to accelerate disciplinary measures ultimately terminating him without cause as more fully outlined above.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to ADA and all applicable statutory remedies including but not limited to: monetary relief for the Plaintiff, including as applicable economic and compensatory damages including punitive damages if applicable, and all reasonable attorney's fees and costs.

## **COUNT IV PHRA DISCRIMINATION**

66.     Plaintiff hereby incorporates by reference all forgoing paragraphs of this Complaint as though fully set forth at length herein.

67.     At all relevant times hereto, Plaintiff was qualified to perform the duties associated with his position and did perform his job consistent with Defendants legitimate expectations.

11

68.    Plaintiff has physical impairments as more fully noted above and incorporated herein by reference.

69.    Plaintiff has a record of such impairments.

70.    Plaintiff is regarded as having such impairments.

71.    All Defendants were aware of Plaintiff's impairments and his need for accommodations.

72.    Plaintiff made every attempt to facilitate the needs of his employer but all the Defendants were unwilling to assist him with any of his requests for accommodations.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to The Pennsylvania Human Relations Act and all applicable statutory remedies including but not limited to: economic and compensatory damages and all reasonable attorney's fees and costs.

## COUNT V PHRA HOSTILE WORK ENVIRONMENT

73.    Plaintiff hereby incorporates by reference all forgoing paragraphs of this Complaint as though fully set forth at length herein.

74.    The plaintiff avers that he is a qualified individual with a disability under the PHRA because his disabilities as more fully noted above.

75. Additionally, the Plaintiff has also been under a physician's care for his disabilities since he was diagnosed.

76.    The plaintiff was subject to unwelcomed harassment when he was repeatedly and continuously mistreated as more fully noted above.

77. The harassment was based on the plaintiff's disability and/or a request for an accommodation.

78. The harassment was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and to create an abusive working environment because the plaintiff was not accommodated, was mistreated as more fully described above, and was repeatedly suspended and terminated.

79. The employers knew or should have known of the harassment and failed to take prompt effective remedial action to quell the constant harassment.

80.    The failure to prevent or correct the unwanted harassment created a hostile work environment and constitutes adverse employment actions.

81.    The fact that the plaintiff's supervisor was a perpetrator of the harassment and discrimination entitles the plaintiff to strict liability for his claims.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to the PHRA and all applicable statutory remedies including but not limited to: monetary relief for the Plaintiff, including as applicable economic and compensatory damages and all reasonable attorney's fees and costs

## COUNT VI PHRA RETALIATION

82. Plaintiff hereby incorporates by reference all forgoing paragraphs of this Complaint as though fully set forth at length herein.

13

83.     As more fully described above, the Plaintiff sought the assistance of Defendants to cease and desist from harassment and to obtain accommodations but was not assisted.  As a result, a hostile work environment has resulted as more fully described above, and the Plaintiff has been retaliated against based on his disabilities.

84.     The PHRA prohibits retaliation in the workplace against employees who have, *inter alia*, sought assistance for disability accommodations in the workplace or to have otherwise opposed practices made unlawful under the law.

85.     The Plaintiff's requests for an accommodation in the workplace constitute "protected activity" pursuant to state and federal law.

86.     Defendants retaliated against the Plaintiff on account of his protected activity, including all that is previously noted above and incorporated by reference herein.

87.     The Plaintiff believes and therefore avers that Defendants' purported basis to discipline him was false and erroneous and that Defendants' had made no attempt to assist the Plaintiff with a reasonable accommodation given his disabling conditions.

88.     As a result of all of the above, the Plaintiff believes and therefore avers that the Defendants created a hostile work environment and retaliated against him on account of his protected activity by imposing disciplinary measures and continuing to accelerate disciplinary measures ultimately terminating him.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to the PHRA and all applicable statutory remedies including but not

limited to: economic and compensatory damages and all reasonable attorney's fees and costs.

## COUNT VII
## TITLE VII - SEXUAL HARASSMENT – SEX DISCRIMINATION

89. The Plaintiff hereby repeats and repleads all preceding paragraphs of this Complaint and incorporates herein by reference as though fully set forth at length.

90. The Plaintiff is a male and in a protected class as such.

91. From August 27, 2014 to November 21, 2014, the Plaintiff was repeatedly sexually harassed by Defendant Lepiz, his supervisor, as more fully noted above and incorporated herein by reference.

92. For example, on August 27, 2014, Lepiz sent Mr. Gross messages on Facebook.

93. On or about September 10, 2014, Defendant Lepiz started sending Mr. Gross messages stating he thought Mr. Gross was cute and sexy.

94. Defendant Lepiz also sent pictures to Mr. Gross.

95. On September 21, 2014, Defendant Lepiz started grabbing and groping Mr. Gross in the workplace.

96. In November 2014, Mr. Gross informed HPPC and Chartwell Staffing Services, Inc. about the sexual harassment by Defendant Lepiz and neither employer did anything to stop the harassment.

97. Mr. Gross unable to perform his duties and grew depressed, anxious, and fearful about losing his job.

WHEREFORE, Mr. Gross prays that this Honorable Court will order all appropriate relief pursuant to TITLE VII and all applicable statutory remedies including but not limited to: monetary relief, including as applicable economic, compensatory and punitive damages and all reasonable attorney's fees and costs.

## COUNT VIII: TITLE VII - RETALIATION

98. The Plaintiff hereby repeats and repleads all preceding paragraphs of this Complaint and incorporates herein by reference as though fully set forth at length.

99. The Plaintiff is a male and in a protected class as such.

100. From August 27, 2014 to November 21, 2014, the Plaintiff was repeatedly sexually harassed by Defendant Lepiz, his supervisor, as more fully noted above and incorporated herein by reference.

101. For example, on August 27, 2014, Lepiz sent Mr. Gross messages on Facebook.

102. On or about September 10, 2014, Defendant Lepiz started sending Mr. Gross messages stating he thought Mr. Gross was cute and sexy.

103. Defendant Lepiz also sent pictures to Mr. Gross.

104. On September 21, 2014, Defendant Lepiz started grabbing and groping Mr. Gross in the workplace.

105. In November 2014, Mr. Gross informed HPPC and Chartwell Staffing Services, Inc. about the sexual harassment by Defendant Lepiz and neither employer did anything to stop the harassment.

106. Mr. Gross, unable to perform his duties, grew depressed, anxious, and fearful about losing his job.

107. On November 21, 2014, after communicating with Chartwell and HPPC about the harassment was fired.

WHEREFORE, Mr. Gross prays that this Honorable Court will order all appropriate relief pursuant to TITLE VII and all applicable statutory remedies including but not limited to: monetary relief, including as applicable economic, compensatory and punitive damages and all reasonable attorney's fees and costs.

## COUNT IX: PHRA - SEXUAL HARASSMENT – SEX DISCRIMINATION

108. The Plaintiff hereby repeats and repleads all preceding paragraphs of this Complaint and incorporates herein by reference as though fully set forth at length.

109. The Plaintiff is a male and in a protected class as such.

110. From August 27, 2014 to November 21, 2014, the Plaintiff was repeatedly sexually harassed by Defendant Lepiz, his supervisor, as more fully noted above and incorporated herein by reference.

111. For example, on August 27, 2014, Lepiz sent Mr. Gross messages on Facebook.

112. On or about September 10, 2014, Defendant Lepiz started sending Mr. Gross messages stating he thought Mr. Gross was cute and sexy.

113. Defendant Lepiz also sent pictures to Mr. Gross.

114. On September 21, 2014, Defendant Lepiz started grabbing and groping Mr. Gross in the workplace.

115. In November 2014, Mr. Gross informed HPPC and Chartwell Staffing Services, Inc. about the sexual harassment by Defendant Lepiz and neither employer did anything to stop the harassment.

116. Mr. Gross unable to perform his duties and grew depressed, anxious, and fearful about losing his job.

WHEREFORE, Mr. Gross prays that this Honorable Court will order all appropriate relief pursuant to the PHRA and all applicable statutory remedies including but not limited to: monetary relief, including as applicable economic and compensatory damages and all reasonable attorney's fees and costs.

## COUNT X: PHRA SEX RETALIATION

117. The Plaintiff hereby repeats and repleads all preceding paragraphs of this Complaint and incorporates herein by reference as though fully set forth at length.

118. The Plaintiff is a male and in a protected class as such.

119. From August 27, 2014 to November 21, 2014, the Plaintiff was repeatedly sexually harassed by Defendant Lepiz, his supervisor, as more fully noted above and incorporated herein by reference.

120. For example, on August 27, 2014, Lepiz sent Mr. Gross messages on Facebook.

121.   On or about September 10, 2014, Defendant Lepiz started sending Mr. Gross messages stating he thought Mr. Gross was cute and sexy.

122.   Defendant Lepiz also sent pictures to Mr. Gross.

123.   On September 21, 2014, Defendant Lepiz started grabbing and groping Mr. Gross in the workplace.

124.   In November 2014, Mr. Gross informed HPPC and Chartwell Staffing Services, Inc. about the sexual harassment by Defendant Lepiz and neither employer did anything to stop the harassment.

125. Mr. Gross, unable to perform his duties, grew depressed, anxious, and fearful about losing his job.

126. On November 21, 2014, after communicating with Chartwell and HPPC about the harassment was fired.

WHEREFORE, Mr. Gross prays that this Honorable Court will order all appropriate relief pursuant to the PHRA and all applicable statutory remedies including but not limited to: monetary relief, including as applicable economic and compensatory damages and all reasonable attorney's fees and costs.

### <u>COUNT XI: WORKERS' COMPENSATION ACT – RETALIATION</u><br><u>AS TO DEFENDANT HPPC ONLY</u>

127.   The Plaintiff hereby repeats and repleads all preceding paragraphs of this Complaint and incorporates herein by reference as though fully set forth at length.

128. The Plaintiff is entitled to a public policy exception due to the retaliation he experienced for his use of Workman's Compensation and his subsequent discharge for doing so.

129. In August 27, 2014, the Plaintiff injured his right hand and wrist while on the job resulting in a worker's compensation injury.

130. While on benefits or seeking benefits the Plaintiff was terminated from his position on November 21, 2014.

131. The Plaintiff avers the employer's termination was in retaliation for his request for workers compensation benefits.

132. The Defendants wrongfully discharged the Plaintiff from his employment in retaliation for his exercise of his rights under the Workers' Compensation Act.

133. The Defendants' intent in terminating the Plaintiff from his employment was to retaliate for the Plaintiff's exercise of his rights under the Workers' Compensation Act, and the discharge is in violation of the public policy.

WHEREFORE, the Plaintiff seeks all applicable remedies including economic relief, compensation pain suffering and humiliation damages and punitive damages.

### COUNT XII: WRONGFUL DISCHARGE
### WORKERS COMPENSATION RETALIATION AS TO DEFENDANT HPPC ONLY

134. The Plaintiff hereby repeats and repleads all preceding paragraphs of this Complaint and incorporates herein by reference as though fully set forth at length.

135.    The Plaintiff is entitled to a public policy exception to the at-will Doctrine due to the Defendants' retaliation for his use of Workman's Compensation and subsequent termination for doing so.

136.    In August 27, 2014 the Plaintiff injured his right hand while on the job resulting in injury and the need for Workman's Compensation benefits. The Plaintiff notified HPPC and benefits were initiated.

137.    The Plaintiff's physician subsequently ordered a light duty plan where he would not be using his right hand and wrist on a consistent motion without accommodations.

138.    However, the Plaintiff was terminated from his position on November 21, 2014 after seeking benefits.

139.    HPPC wrongfully terminated the Plaintiff from his employment in retaliation for his exercise of his rights under the Workers' Compensation Act.

140.    HPPC's intent in terminating Mr. Gross from his employment was to retaliate for the Plaintiff's exercise of his rights under the Workers' Compensation Act, 77 P.S. § 1 et seq., and the discharge is in violation of the public policy of the Commonwealth of Pennsylvania.

WHEREFORE, Mr. Gross requests that this Honorable Court find that HPPC's Worker's Compensation Retaliation constitutes a public policy exception

pursuant to the violation of the Workers' Compensation Act, 77 P.S. § 1 et seq., and requests that this Honorable Court award damages including punitive damages against HPPC, costs, and attorney's fees as determined under law and proven at trial.

## COUNT XIII INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

141. Plaintiff hereby repeats and repleads all preceding paragraphs of this Complaint and incorporates herein by reference as though fully set forth at length.

142. Plaintiff has suffered irreparable severe and emotional distress and harm by the intentional and/or reckless conduct of the Defendants.

143. Defendants harassed, and permitted harassment of the Plaintiff as more fully noted above above and incorporated herein by reference.

144. Defendants' harassed the Plaintiff by refusing to accommodate his injury or disability and discharging his employment without cause.

145. Defendants' showed utter disregard for Plaintiff's condition, intentionally and/or recklessly and viciously demeaning the Plaintiff by their repeated actions and conduct.

146. Defendants' outrageous conduct, as more fully described above, evidenced extreme disregard for Plaintiff's medical condition and caused the Plaintiff to be met with humiliating treatment during severe and disabling pain in a manner that disrupted

his treatment plan and caused severe emotional distress by adding insult to injury and the burden of an unjustified termination.

147. The conduct of Defendants' as more fully set forth above, was extreme and outrageous.

148. As a direct and proximate result of Defendants' extreme and outrageous conduct, as more fully set forth above, Plaintiff suffered severe emotional distress, including but not limited to high blood pressure, depression, anxiety, heart palpitations, stomach disorders and insomnia.

149. As a direct and proximate result of Defendants' extreme and outrageous conduct, as more fully set forth above, Plaintiff suffered severe emotional distress, as more fully set forth above, which resulted in symptoms including but not limited to feelings of fright, shock, humiliation, severe anxiety, outrage, guilt, depression, panic, and diminished self-esteem.

150. As a direct and proximate result of the emotional distress, as more fully set forth above, Plaintiff sustained bodily harm, including but not limited to shortness of breath, gastrointestinal upset, increased heart rate with palpitations, insomnia and severe anxiety.

151. Plaintiff required, sought and received medical treatment, including mental health counseling for the aforesaid emotional distress and resulting injuries.

152. As a direct and proximate result of said injuries, Plaintiff has endured pain and suffering, great mental anguish, and will endure additional pain and suffering in the future, and claim is made therefor.

153. As a direct and proximate result of said injuries, Plaintiff has suffered a loss of life's pleasures and enjoyment and claim is made therefor.

154. As a direct and proximate result of said injuries, Plaintiff has suffered great humiliation and embarrassment, and claim is made therefor.

155. As a direct and proximate result of said injuries, Plaintiff has incurred liability for medical expenses, rehabilitative expenses, psychiatric/psychological counseling expenses, and will incur such expenses in the future, and claim is made therefor.

156. As a direct and proximate result of said injuries, Plaintiff has sustained a loss of earnings, including but not limited to back wages and claim is made therefor.

157. As a direct and proximate result of said injuries, Plaintiff has sustained an impairment of earning power and earning capacity, and claim is made therefor.

158. The actions of Defendants' and its agents, as more fully described above, constitute extreme and outrageous conduct that evidenced a wanton disregard for the safety and wellbeing of Plaintiff and which were undertaken with the direct intent to harm Plaintiff and/or callous disregard for Plaintiff's wellbeing, thereby

warranting the imposition of punitive damages and claim is made therefor.

*WHEREFORE,* Plaintiff requests this Honorable Court to enter judgment in her favor and against the Defendants, jointly and severally, for:

1.    Back pay and benefits;

2.    Front pay and benefits should reinstatement prove unfeasible;

3.    Statutory prejudgment interest;

4.    Compensatory damages;

5.    Reasonable attorney fees and costs;

6.    Punitive damages; and

7.    Any other relief that this Court deems just and proper.

Respectfully submitted,

DONHAM LAW

By: */s/ Jeremy A. Donham, Esquire*
Jeremy A. Donham, Esquire Attorney for Plaintiff

Supreme Ct. I.D. #206980
P.O. Box 487
Dellslow, WV 26531
Phone (717) 676-7749
Fax: (888) 370-5177
E-mail: donhamlaw@comcast.net

25